IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>vs.<br><br>ROGER ABBOTT,<br><br>      Defendant. | 8:13-CR-254<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the government's objection (filing 35) to the findings and recommendation (filing 31) of United States Magistrate Judge Thomas D. Thalken, recommending that Abbott's motion to suppress (filing 18) (as supplemented by an additional argument raised in filing 24) be granted. Abbott is charged with various controlled substances offenses, in violation of 21 U.S.C. §§ 841 and 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

  Police conducted a traffic stop of Abbott for failure to use a turn signal as required by Neb. Rev. Stat. § 60-6,161. Abbott has moved to suppress evidence recovered from the car he was driving and to suppress statements he made to police following the stop. Judge Thalken found that the traffic stop was unlawful because (1) the statute did not require Abbott to use his turn signal under the circumstances; and (2) if the statute did require Abbott to use his signal, he did so adequately. Filing 34 at 68–70. The government has objected to both findings. Judge Thalken did not find it necessary to reach Abbott's alternative argument, that § 60-6,161 is unconstitutionally vague as applied under these circumstances.

  The Court has conducted a de novo review of Abbott's motion to suppress, pursuant to 28 U.S.C. § 636(b)(1), and has reviewed the parties' briefs, the exhibits, including a video of the traffic stop, and both the transcript and audio recording of the hearing before the Judge Thalken. *See United States v. Lothridge*, 324 F.3d 599, 600–601 (8th Cir. 2003) (de novo standard includes review of magistrate judge's credibility determinations). The Court concurs with Judge Thalken's finding that Abbott adequately signaled his turn, and therefore finds it unnecessary to decide whether § 60-6,161 required the use of a turn signal under the circumstances. Accordingly, the Court will adopt Judge Thalken's recommendation and grant Abbott's

motion to suppress (filing 18). The Court declines to consider Abbott's additional argument, that the statute is unconstitutionally vague, and will deny Abbott's supplemental motion to suppress (filing 24) as moot.

## BACKGROUND

On May 9, 2013, Officers Hilary Ekeler and James Phenis of the Omaha Police Department were directed by their sergeant to conduct a traffic stop of Abbott, who was being investigated for his role in a drug conspiracy. Phenis and Ekeler were waiting in a police cruiser when they received word that Abbott was driving a blue Mercury Mountaineer east on Interstate 80. Filing 34 at 11–13, 20, 44. They began to head in that direction, with Phenis driving and Ekeler sitting in the front passenger seat. Filing 34 at 13.

The officers caught up with Abbott on I-80, between the exits for 84th and 72nd Streets. Filing 34 at 13. When the officers first observed Abbott's vehicle, he was traveling in the far left lane. Filing 34 at 13. Abbott then merged over into the far right through lane, but because Abbott was approaching the exit for 72nd Street, there was an additional exit-only lane further to the right. Filing 34 at 13; exh. 104 (aerial map of intersection). Abbott was traveling in the right-side through lane, to the immediate left of the exit-only lane. Filing 34 at 13, 27. The lane Abbott was in begins to widen approximately 300 feet before the exit, gradually splitting into two lanes: one that continues on I-80 and one that exits. Exh. 104; filing 34 at 26–27. At the exit, a solid white line divides the through lane and exit-only lane. Exh. 104. The officers pulled into Abbott's lane, two cars behind Abbott. Filing 34 at 27.

Ekeler testified that she saw Abbott exit at the last possible moment, and that before doing so he only did "one blink" with his turn signal. Filing 34 at 14–15. Ekeler believed that Abbott had therefore failed to signal his turn more than 100 feet before exiting, and that this was a violation of Neb. Rev. Stat. § 60-6,161, providing probable cause for a traffic stop. Filing 34 at 18–19. Ekeler alerted Phenis to Abbott's failure to signal properly, and the officers followed Abbott onto the exit ramp and initiated a traffic stop. Filing 34 at 15, 19. Following the stop, Abbott made incriminating statements, and a search of Abbott's vehicle and person turned up drugs, a firearm, ammunition, drug paraphernalia, and money. Filing 34 at 15–19, 57.

The officers' cruiser was equipped with a system that made a video recording of the events relevant to this case. Filing 34 at 14; exh. 1. The video depicts only events occurring in front of the police cruiser, from roughly the driver's perspective. Filing 34 at 14, 47–48; exh. 1. In addition to video, the recording displays other information about the police cruiser, such as its current speed. Filing 34 at 21; exh. 1. The video shows the police cruiser approaching Abbott's vehicle, then moving into the same lane as him. Exh. 1

at 19:42:50–43:03. At that point, Abbott's vehicle is no longer visible on the video, as there were two cars between Abbott and the officers. Exh. 1 at 19:42:03. Abbott's vehicle is not visible on the video again until after he had already exited. Exh. 1 at 19:43:11–43:15.

Ekeler testified that because she was sitting in the passenger seat, she had a different perspective than Phenis or the video, and she was able to move around and maintain sight of Abbott's vehicle. Filing 34 at 14, 28. She stated that she was able to keep Abbott's vehicle in sight the entire time, although she might have been looking away for about "one second." Filing 34 at 28. And Ekeler explained that Abbott only signaled "well within" the 100 feet he should have, because she was able to see the front of his vehicle almost touching the solid white line separating the exit lane from the lane continuing on I-80. Filing 34 at 32.

Abbott also testified at the suppression hearing. He stated that he noticed the police car behind him and so he made sure he drove "correctly." Filing 34 at 56. Abbott explained that he checked his speed and found he was traveling within the speed limit, between 50 and 55 miles per hour. Filing 34 at 56. And he stated that he made sure he used his turn signal before exiting. Filing 34 at 56–57. Abbott testified that he used his turn signal for 2 to 3 seconds before reaching the solid white line separating the exit lane from the lane continuing on I-80. Filing 34 at 57.

The parties disagree whether Neb. Rev. Stat. § 60-6,161 actually required Abbott to use a turn signal under the circumstances. The statute provides in relevant part:

> (1) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in sections 60-6,162 and 60-6,163.
>
> (2) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

Neb. Rev. Stat. § 60-6,161; *see also United States v. Adler*, 590 F.3d 581, 583–85 (8th Cir. 2009).

Abbott points to the fact that the statute does not explicitly require a signal before *exiting*. And, Abbott argues, he did not turn, change lanes, or move right or left, because he simply stayed in his lane, part of which became an exit lane. Alternatively, Abbott argues that the statute is unconstitutionally vague as applied to these circumstances. The

- 3 -

government's argument, summarized, is that Abbott was confronted with a choice: exit or continue on I-80. When Abbott chose to exit, he was also "mov[ing] right . . . upon a roadway" and so a signal was required. *Cf. Adler,* 590 F.3d at 583 (broadly construing § 60-6,161).

Judge Thalken found that § 60-6,161 did not require Abbott to signal under the circumstances, because he simply followed the lane in which he was traveling. Filing 34 at 68–69. Judge Thalken also determined that, if Abbott was required to signal, he did so adequately. The officers had therefore been "overeager . . . to stop the defendant and find a traffic violation[,]" and any belief by Ekeler that Abbott had failed to signal his turn was unreasonable. Filing 34 at 69. So, Judge Thalken found that all of the evidence discovered following the stop was tainted by the stop's illegality, and granted Abbott's motions to suppress. Filing 34 at 69–70.

## ANALYSIS

The government objects to both prongs of the Judge Thalken's findings. After carefully reviewing the evidence, this Court also finds that even if Abbott was required to signal, he did so adequately, that is, within 100 feet of his exit. The Court therefore declines to determine whether § 60-6,161 requires the use of a turn signal in these circumstances, and likewise declines to consider Abbott's argument that the statute is unconstitutionally vague.

Under the Fourth Amendment, law enforcement officers may stop a vehicle if they have an articulable and reasonable suspicion that a traffic violation has occurred, even if the violation is only minor. *United States v. Beard,* 708 F.3d 1062, 1065 (8th Cir. 2013). The officer's subjective motivation for making the stop is irrelevant to the assessment of reasonability under the Fourth Amendment. *United States v. Frasher,* 632 F.3d 450, 453 (8th Cir. 2011). So, it does not matter that a stop was a pretext and that the officer would have ignored the traffic violation but for his or her ulterior motive. *Id.*

The validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or of fact, was an objectively reasonable one. *United States v. Payne,* 534 F.3d 948, 951 (8th Cir. 2008).

The Court is faced with conflicting testimony on a key point. Abbott testified that he signaled for 2 to 3 seconds, and Ekeler testified that Abbott only did a "one blink" signal. The Court finds Ekeler's testimony to be the less persuasive. Abbott testified that because he noticed the police behind him, he made sure to drive correctly. Given the contraband he was carrying, that

makes sense. Abbott explained that he drove between 50 and 55 miles per hour and signaled his turn for 2 to 3 seconds prior to exiting.

The simple equation [distance = rate x time] shows that if Abbott is believed, 2 to 3 seconds' worth of signaling was more than sufficient to comply with § 60-6,161. If Abbott was traveling at 50 to 55 miles per hour, in order to use his turn signal for 100 feet, he would have needed to use it for only 1.24 to 1.36 seconds *before* moving right to exit—once Abbott had exited, he was not required to maintain his turn signal.

Ekeler stated that she did not know how fast Abbott was traveling. Filing 34 at 31. Nor did she know how far 100 feet from where Abbott exited would have been. Filing 34 at 31–32. And although Ekeler testified that she was able to maintain sight of Abbott's vehicle the entire time, she admitted she might have been looking away for about "one second." Filing 34 at 28. When defense counsel asked Ekeler if she was familiar with the equation above, Ekeler responded that she was not. Filing 34 at 32. And she admitted she did not know how long someone would be required to use their turn signal if they were traveling at a rate of 50 or 55 miles per hour. Filing 34 at 33–34. This may have had something to do with the fact that while Ekeler enforced traffic laws "at times," she was actually a member of the narcotics unit and not responsible for traffic patrol.[1] Filing 34 at 11, 34.

The Court further finds that any mistake on Ekeler's part concerning how long Abbott had signaled was not a reasonable mistake. Under these circumstances, the difference between compliance with the law and a traffic violation was a matter of seconds—a difference that a reasonable officer would appreciate. An officer either is or is not watching a driver's vehicle for

---

[1] Both parties point to the fact that Phenis appeared to wait until the last second to take the exit, and actually crossed over the solid white line in doing so. *See* Exh. 1 at 19:43:15–18; Filing 34 at 28–29. Abbott argues that this shows the officers had, in fact, lost sight of him, and therefore were unable to see whether he had used his turn signal. Because the cruiser was two cars behind Abbott, he argues, the officers should have been able to make the exit even if Abbott waited until the last minute. But Ekeler's testimony points to a different explanation:

> Q [Defense Counsel]: . . . Why were you required to veer at the last second, crossing over a white line, instead of just follow[ing] the defendant through that exit?
> A [Ekeler]. Well, I was not driving, one. And, two, when I relayed what I observed as far as the infraction and relayed it to the officer that was driving, that was his reaction time. I can't speak for him.

Filing 34 at 29. The Court finds this evidence to not be particularly persuasive either way, and it has had no material impact on the Court's analysis.

the entire duration that a turn signal is required. And if not, then it is not reasonable for the officer to simply assume that the driver failed to signal.

The government has conceded that if the stop was unconstitutional, both the physical evidence and defendant's statements must be suppressed. Filing 20 at 2. Accordingly,

IT IS ORDERED:

1. The Court adopts the Magistrate Judge's findings and recommendation (filing 31), in part, as discussed above;

2. The government's objection (filing 35) is overruled;

3. Abbott's motion to suppress (filing 18) is granted; and

4. Abbott's supplemental motion to suppress (filing 24) is denied as moot.

Dated this 11th day of October, 2013.

BY THE COURT:

John M. Gerrard
United States District Judge